That's my best effort. Gary A. Yudishin. Good morning. My name is Gary Yudishin. I represent Dr. Niamatali, who's the appellant in this case. And what I really want to focus my argument on is the venue issue, which I expect is what the court's primarily interested in here. This is a bit of an unusual venue question, because what we have here is an obvious forum shopping, essentially, by the government agents. So I know the court's familiar with the facts, but essentially what you have is an entire alleged conspiracy involving Dr. Niamatali and people who worked in his clinics, all in the Northern District of Texas. He had a clinic in Garland. He had a clinic in Lancaster, both in the Northern District of Texas. And you would have known this when the complaint was filed, when the indictment was filed. You would have known it was a venue issue, but yet you didn't raise it until the morning of trial. Okay. Well, Your Honor, I wasn't the trial attorney. You are the trial attorney now. I understand. You're in his shoes. I understand. And I can't speak for why it wasn't raised earlier, although I don't think it matters for purposes of this Court's analysis as to whether or not the government proved the venue by preponderance of the evidence. Well, it matters if it was waived. Then you don't raise it. It's not an issue if it was waived. And I don't believe the government argues that it was waived, and I don't think that became an issue below. The defense lawyer at trial did bring to the Court's attention at the beginning of the trial that this was going to be an issue. He made a motion for judgment of acquittal, timely preserved the issue. It was fully argued to the trial court. Trial court denied the argument. It was submitted to the jury in a jury instruction. I don't believe there's a waiver issue here. But what I do think is at issue here is the fact that the government agents, the DEA interdiction agents who made this case against Dr. Dean Mitali and his co-defendants, apparently, and there's nothing in the record, and there's nothing in the record as to why they took it to the Eastern District of Texas when it was clearly a Northern District of Texas case. But nevertheless, the record is clear that it was a Northern District case that was taken to the Eastern District. And so I think the Court needs to have to take that big picture when you're looking at the facts of the case to see whether venue was proven by a preponderance of the evidence. The problem with this case is, is that the government, among the problems with the case, is that the government's position at trial, and this was the basis for the trial court, for the district court's ruling that there was venue, was that venue was established in the Eastern District of Texas because the patients who were receiving the prescriptions from Dr. Dean Mitali, some of them filled the prescriptions in the Eastern District of Texas. And the government's argument was they were co-conspirators because of the actions they had done with the prescriptions they had received from Dr. Dean Mitali. The appellant's attorney argued at trial that a — that this was a buyer-seller relationship and that they were not co-conspirators. The trial court disagreed with that. The government disagreed with that. But now on appeal, the government concedes that they were incorrect in their argument below and that, in fact, the patients are not and were not co-conspirators because of the line of cases in this Court and others that say that a buyer-seller relationship in a drug transaction doesn't make the buyer a co-conspirator. So they're having to make a different argument than what they made in the court below. And essentially what this comes down to at this point is whether or not the actions of the patients in taking a prescription, like take one particular patient, that goes to Garland or goes to Lancaster in the Northern District of Texas, gets a prescription from Dr. Dean Mitali for these drugs, and fills it in Plano in the Eastern District. And so the question is whether or not that is an act in furtherance of the conspiracy. And I think part of the dispute that we come down to, based upon what the government's current position is, is whether or not that patient's actions have to be done with the intent to further the conspiracy or whether or not just the fact that his actions may have, have in some way furthered the conspiracy is enough. And as we've cited, we cited in our brief that the law requires, and we cited cases as well as the conspiracy statute, that essentially what it comes down to is you have to have an overt act committed in the district of the prosecution. So there has to be an overt act committed in the Eastern District. And an overt act is something committed by a co-conspirator in order to further the conspiracy. And under the case law that we've cited, and I don't think the government's really cited anything contrary to this, these patients are not doing overt acts that further the conspiracy because they're not conspirators. They have no interest in assisting Dr. Nia Mitali in his business. Well, they have an interest in obtaining the drugs illegally. That's correct. Assisting the doctor in making what tons and tons of cash payment received. But, Your Honor, no different than any buyer-seller relationship in any drug transaction. And since a buyer in a drug transaction. And the value that the doctor receives from writing a prescription is without regard for where that prescription is filled. Isn't that right? Absolutely. And, in fact, it's— For his purposes, assuming he had some criminal purpose, it's complete when he gives them what they want, which is a prescription. That's right. He doesn't even have any interest in whether they even fill the prescription. I mean, he makes his money because they're paying him to come in and see him, and he gives them a prescription. And his co-conspirators were all people who worked in his office. And so everything that was done by the four people that were charged in this case was all done in the Northern District of Texas. Do you know why the indictment was filed in the Northern District as opposed to the Eastern District? This seems to happen quite frequently. Your Honor, filed in the Eastern District as opposed to the Northern District. I don't know that you're asking me to speculate, but I'll be happy— It comes up a lot. It does come up a lot, and I know some of the cases we've cited is where it comes up, and I think that's a good question for the government. I think it's obvious that the agents here took the case to the Eastern District. They did this entire investigation of his clinics in Lancaster and Garland, an entire investigation of illegal activity that they alleged that all occurred in the Northern District, yet they took it to the Eastern District for some reason that I have a speculative reason which I won't share with the Court. But nevertheless, I think this is unusual because of that circumstance. You have a lot of cases that both sides have discussed in our briefing where cases wind up being tried in a district where other districts may have an interest in the criminal activity or the criminal activity crosses multiple districts. And maybe even some cases where there's another district that has a greater interest than the particular district where it's tried. But I don't think any of us have cited any cases where it's obvious that there was a forum shopping to seek out a particular district, and I think that's what makes this particularly different. It seems to me that this is an important case and, in a sense, a case of first impression because what you really have is a situation where criminal activity in the Northern District of Texas under the Constitution, what should be done with that should be decided by prosecutors and juries in that district. And so you're taking criminal activity in the Northern District and you're letting the U.S. Attorney's Office in the Eastern District and juries in the Eastern District decide what to do with that and judges in the Eastern District. If you win your venue argument, can it be retried in the Northern District in Dallas? I don't see why not. And I expect that's probably what would happen under the circumstances here. I do want to point out that I think this is important. The Romans case, which I know the Court's familiar with, in particular Judge Costa's concurrence in there, where Judge Costa was cautioning, although he recognized that the Court absolutely correctly applied the law and so he concurred in the Court's opinion there, but he was cautioning I guess the entire system, including the Eastern District of Texas, concerning stretching or subverting the venue requirement to snatch cases that really aren't supposed to be their cases. And I think this, the warning that Judge Costa was given, this case goes directly to what he was saying, with one major difference is that here I do think the law is going to dictate a conclusion that the Eastern District didn't have venue, whereas in the Romans case the Court found that they did have venue. I think it's important to view the case as one, and let me back up for a second. I don't think there's any question, and I would be surprised if the government tried to defend this. I don't think there's any question that everybody agrees that the most appropriate venue for this prosecution was the Northern District of Texas. I don't think the government can make an argument that the most appropriate venue was the Eastern District. So you begin with the fact that they have done something that they shouldn't have done in the first place, and then the question is whether they can slip into some interpretation of the law that allows them to do it. So I think that's what's important for the Court to keep in mind on this. If I could, I just want to make a couple of just brief comments on a couple of other grounds, and that concerns the comments that the prosecutor made during his examination of Dr. Nehemiah Talley, cross-examination. One, basically saying you don't have any other doctors here to say what you did was okay, and then the second question was essentially you don't have any of your patients here to support what you're saying. And the law from this circuit is clear that it is improper for the prosecutor or for either side to comment upon the failure to call a witness who is equally available to both sides. I don't think the government makes a serious contention that these witnesses were under the control of the defendant because we don't even know a particular person. They're just saying you didn't bring in any doctors here to say you're right, and you didn't bring in any patients here to support what you're saying. So these are clearly improper comments that prejudice the defendant. I think there's some – there's not really ambiguity. We make an argument, a short argument, that this should be a constitutional error, although we recognize that the Court's cases don't treat this type of error as constitutional error. But nevertheless, it is something that we would urge the Court to reverse on also. Well, a charge was given, right? It was in the jury instructions that the defendant is not required to bring forth any evidence. Did the defense counsel request that the charge be given at the time the prosecutor made these comments? I don't believe he made that request. Thank you, Your Honor. Thank you, sir. Mr. Visosky? Correct, Your Honor. Bradley Visosky for the government, and I have with me Glenbrook Jackson, who was the lead trial attorney in the case. I'd like to start by addressing the allegation of forum shopping. There is no evidence in the record that this was forum shopping on the part of the Eastern District of Texas. And what I'm about to say is also outside the record, but since the Court broached the issue, I'd like to address it. This case was presented by the DEA to the Northern District of Texas. The Northern District of Texas declined it. It was then brought to the Eastern District of Texas, and the U.S. attorney for the Eastern District of Texas has a significant interest in what happened here. I submitted to the courtroom deputy this morning certain exhibits that were admitted at trial, and the first two on the first two pages show, the first page shows out of 25,000 instances where Dr. Nematolley issued illegal prescriptions, 1,400 of those were filled by residents who lived in the Eastern District of Texas. Out of how many? What was the first number? Out of 25,000 illegal prescriptions, 1,400 instances of those were by residents who lived in the Eastern District of Texas. So what percentage is that of the 25,000? Doodle, if you got the math done for me quickly. I want to say it was, I did it at one point. I could be wrong, it was around 6%. I could be wrong. But still, that's a large number. What's the overt act? The overt act is, well, it can be looked at two ways. One is the filling of the prescriptions in the Eastern District of Texas. That is an act, and just as overt act is described, an act that furthers. But doesn't the overt act have to be committed by a co-conspirator? It does not, Your Honor. It does for conspiracy cases under Section 13, I'm sorry, under Section 371. And that's where we believe the appellant confuses liability for a 371 conspiracy versus venue for an 846 conspiracy. The cases that they cite in their reply brief are 371 cases. For 846 conspiracy cases, of course, no overt act is required for the crime. But this Court's cases recognize that an overt act, an act in furtherance of the conspiracy in the district, can give venue. What's your legal authority? The Romans case that was mentioned. But it doesn't have to be, the overt act doesn't have to be performed by a co-conspirator. That also, we just filed a letter in the, oh, I'm sorry. What did we say in Romans that is authority for this case? And by the way, I wrote Romans and leaned hard to approve the venue in that case. And I share the concerns that Judge Costa expressed so well. And this is my second case where it looks like a northern district case. I didn't know they were declining them. I thought the government was just bringing these cases to get a hard conservative jury in the eastern district or something like that. If there's some problem that the northern district should be taking care of its cases, I wish you all would get it straight. Because even when you do have venue like in Romans, we had to scour the record to find enough facts to approve the venue in that case. Right, Your Honor. And the language I was relying on in the majority of Romans was just the simple proposition, and it's throughout Fifth Circuit case law, that venue can be established where the agreement occurred or an overt act occurred. Romans does not say that the overt act occurred. Agreement between who? You're saying where the agreement occurred? Yeah, where the agreement was formed or where the conspirators. And who were the conspirators in this case? In this case, it was the doctor, his wife, who was kind of like the office manager, and his staff. But going back to Romans. Although throughout the course of the trial, the government was representing that there were co-conspirators who were patients. Your Honor, that came up in argument outside the presence of the jury before the court, and that goes to part of the confusion there, I believe, was because venue wasn't raised before trial. I think everyone's instincts on the point were correct at first. Judge Crone initially said, look, I don't think the overt act has to be done by a conspirator. So long as it impinges on the district, venue is appropriate. Only later did she come back and say that it must be by a conspirator, which I think misstates the law, Your Honor. But the government agreed to that. Well, it did, Your Honor, and I think that was just a lack of foresight or knowing that that argument would be made and doing the appropriate case law. And there was testimony that these drugs were redistributed in the Eastern District of Texas. What was lacking was evidence of, for example, like sufficient quantities, prior cooperation in dealing. Was that argument made to the jury that the co-conspirators were the patients? It was not made specifically that those were the co-conspirators. In the closing argument, what the prosecutor argued was, look, this case could have been tried in Oklahoma, Arkansas, Eastern District, Western District. Why? Because that's where the patients were filling the prescriptions. And going back to authority for that the overt act in an 846 conspiracy case does not have to be conducted by a conspirator, in U.S. v. Perez, which is cited in our letter, this, quote, court cites language that an overt act for purposes of a continuing offense under the general venue statute can be that of a single conspirator or even an innocent agent who is acting at his direction. And what is a prescription but an instruction, a direction to fill a specific drug? And that was done in the Eastern District of Texas. What was the value to the doctor of the prescription being filled? It was – he had an interest that the prescriptions be filled for two reasons. One, that he wasn't ratted out. If he's writing all these illegal prescriptions and the patients don't get their drugs, there's a possibility they could go to law enforcement or come back and complain or riot or whatever. And two, there's no question that a lot of these patients that he was giving these illegal prescriptions for were drug addicts. So he has an incentive for those addicts to get their drugs, get their fix, and then come back to his clinic. That's how he received, for example, the $214,000 in cash that was found in his clinic. But having an economic interest or an incentive, that's not enough to make a conspiracy. Well, we're not saying that the doctor was conspiring with the patients. The conspiracy was within his clinic. What we're saying is that the overt acts, which again we believe that the law supports, does not have to be committed by a co-conspirator. Any act that furthers the object of the conspiracy. You said by a co-conspirator or an innocent person acting as an agent for a – you don't have either one, do you, in this case? We do, Your Honor. We have – he's acting as a – the patients are the innocent agents here acting at the direction. You just said they're not innocent, didn't you? Well, they're not innocent in the sense that they're receiving illegal prescriptions, but they're innocent in the sense that we're not alleging now that they were conspiring with the doctor. If they're not co-conspirators that have entered into an agreement with the doctor, who do you have that is the conspirator? The conspirators are the doctor, his wife, who is the office manager, and the workers within the clinic. And that crime did not go beyond the bounds of the clinic walls, much less the northern district did it. But that could be said of any 846 drug conspiracy. If it's only where the agreement itself occurred, then in Romans there would be no venue in the eastern district of Texas because the conspiracy wasn't formed there. An overt act, an act in furtherance of the conspiracy, was formed there by virtue of the cars proceeding through the eastern district. But do you have co-conspirators doing the overt acts in the eastern district? If we didn't, we were wrong. We don't in this case, Your Honor, but we believe that the law supports that the overt act for an 846 conspiracy, not 371, does not have to be committed by a co-conspirator. What's the difference between 846 and 371? I'd appreciate it if you'd speak in ordinary language rather than numbers. I'm sorry, Your Honor. Yes, 371 is just the general conspiracy statute that requires that the overt act be committed by a conspirator. 21 U.S.C. 846 is the drug conspiracy statute, and there is no overt act requirement based on the Schiavone case from the Supreme Court. Before you move on, you said that you relied on the U.S. v. Perez, which was in your letter. Is that the 28-J letter that was refused to be filed? As of last night, I hadn't seen any refused to be filed. When did you file that? Friday, Your Honor. And what's the date of the Perez case? I thought that 2007. It was unpublished. Well, it would have been rejected because 28-J letters only are allowed if it's a case that's come out to your attention between the time you file your brief and oral argument. So that letter did not make it into the record because I was looking for it and couldn't find it, but then I realized that I think it got rejected. Okay. Okay, Your Honor. Going specifically to Judge Costa's concurrence in the Roman case, everything that he was talking about in that concurrence supports venue in the Eastern District of Texas here. In that case, there was a lot of activity in Indiana, and he was saying that even though the law supports venue in the Eastern District because the proceeds traveled through here, what you look at is the community interest in law enforcement and really kind of where the drugs were delivered, where the effects were felt. And that happened 1,300 times within the Eastern District of Texas. It would be extremely odd, we believe, for a drug conspiracy where the drugs were actually delivered in the district for that not to be a district of proper venue. And Judge Costa talked about the community's interest in law enforcement, and here we have the U.S. Attorney for the Eastern District of Texas in the midst of the opioid crisis wants to make sure, especially when the Northern District of Texas declines a case, that the victims, ultimately the recipients of these illegal prescriptions, are protected. And you also have a difference from Romans is just the proximity issue. I mean, there was Indiana to… It looked to me like the people in the Northern District maybe need more protection than the ones in the Eastern District in this particular case. Only 6% of the prescriptions were filled in the Eastern District. Why is the government declining a case when 94% of the prescriptions were filled in their district, Northern District? Your Honor, I can't speak for the U.S. Attorney for the Northern District of Texas' actions. All I can say is that we believed it was a strong case. There is no challenge to sufficiency here. And in terms of just the overarching constitutional concern and the concern that defendants be tried in their visnage where they have their support system, where they have relevant witnesses, and on the third page of… But why did the DEA reject the indictment? I'm sorry, Your Honor? Opposing counsel said DEA refused to take the case. Oh, no, no, no. That's what he said. That's totally incorrect. All right. So what's the truth? The DEA thought this was a very strong case, and it was presented to the Northern District of Texas. They rejected it. The U.S. Attorney's Office? Correct. Okay, all right. And then they came to our district, and they have a strong interest in this case. But going again to the constitutional concerns on page three, and this was an exhibit admitted at trial, it shows Dr. Nematolley's Garland office, and it shows that Plano, within ten miles of his office, you have Plano residents. And it just goes to show that this not is some remote location of concerns by the Colonials, for example, that was cited in the Declaration of Independence. You didn't say he had an office in Plano, did you? No, Your Honor, in Garland. But what this chart shows is that Plano, these prescriptions were being filled within ten miles of his Garland office. And there was testimony at trial that just your ordinary primary care physician is typically within ten miles of your residence. So it was certainly foreseeable to Dr. Nematolley that some of his patients would be coming from the Eastern District of Texas. In this court, I could not find where it required a foreseeability requirement for venue purposes. But if there is one, it's certainly met here. But there isn't one. That's why I'm shocked to hear you talking about foreseeability in a case where we're talking about a doctor writing prescriptions. And you're telling me if it's foreseeable that they may be filled in a certain venue, then it's reasonable for him, I guess, to expect that he could be indicted and prosecuted in that particular district. That's what you're telling me? Well, I think that's the argument, Your Honor. You don't have any case that says that, do you? We do, Your Honor. It's the Rami case that we cite in our brief that talks about foreseeability. And here we have not only foreseeability given the proximity of the patients, the customers, to Dr. Nematolley's clinic. We also have in the record, and this is the fourth page of the exhibit, a prescription for a Plano resident. And he's receiving, in the patient's chart, there's communication from a CVS pharmacy in Plano, Texas, to Dr. Nematolley's office. This is in his charts, asking questions about dosage information. And it has... Tell me how that would be foreseeable to the doctor. Is he supposed to be looking at where the people live, or does he ask them on their first visit where they're going to get it filled? I mean, I don't know how my doctor, that I see all the time, is foreseeable where I get my prescriptions filled. Unless I call back and I say, can you call in a refill? And then he'll say what pharmacy would you like it if he's inclined to call it in. He may say you need to come in again and he'll see you again, that prescription's expired. But I'm trying to figure out how this is going to be foreseeable. What's he basing the foreseeability on? Well, there are two things. One, it's not just foreseeability. There's actual knowledge, or presumed actual knowledge. I would hope that the doctor has knowledge of what's in his patient's charts of where they live. Unless that's relevant to his medical treatment, where I live, I don't know how that matters to my doctor if I go in and I've got flu-like symptoms. My residence is important to that. Not only where they live, Your Honor, but also that they're filling his illegal prescriptions in the Eastern District. And that's what this exhibit shows. And not only Dr. Nematale himself, even though he might not have specific knowledge of where these patients live or have an in- his office workers would by reviewing the charts. And they were also indicted in this case. And the Romney case talks about foreseeability. And it talks about the issue of whether the overt act has to be done by a conspirator. And there are different sections on that. And we'll just cite the language. What's this case? Romney from the Second Circuit. I don't have the cite here, but it's cited in our brief, Your Honor. Action by a conspirator is a continuing act so long as it's done to further a conspiratorial goal. It does not matter if the recipient is an innocent third party. And this is the quote. The law does not require a defendant to have actual knowledge that an overt act will occur in a particular district to support venue at that location. At most, it asks that the overt act's occurrence in that district of venue have been reasonably foreseeable to a conspirator. And just briefly, Your Honor, on- Reasonably foreseeable to a- To a conspirator. Of course, we're not bound by that. Of course. Second Circuit, huh? Right, right. And here, the conspirators would be Dr. Nehmet Ali and the workers and his wife and his clinics. Has the Supreme Court ever said that, used that foreseeable argument? I have not seen it. Approved it? I have not seen it, Your Honor. But usually it's perceived as an additional burden on the government rather than a benefit. So we're not saying that there is a foreseeability requirement. But if there is, we've certainly met it here, given the proximity, given the information in the patient's charts, where they came from, and where these prescriptions occurred. Did you make all that argument at trial? Or did you just say the patients are called conspirators? We have some patients who are called conspirators. Well, at trial, Your Honor, the legal argument at one point was made to the judge that the patients were co-conspirators. And I believe at closing that it was mentioned that some of the patients, based on the testimony, were redistributing the drugs within the Eastern District of Texas. You made your reasonable foreseeability argument. Oh, no. The foreseeability was not. But what was argued was that, look, this case could have been brought in any number of districts because of where the prescriptions were filled, where the patients were coming from. And any time a prescription is filled, and this is the key point, if a prescription is filled, that's an act in furtherance of the conspiracy. It's an act, as this Court said in Garcia-Mendoza and in Romans, and if I may just finish this one point, Your Honors. An act that initiates, perpetuates, or completes the crime is all that's required for venue. And the filling of the prescription is an act that perpetuates the crime because the customers get their drugs, and it leaves open the possibility they'll come back, and it redounds to the profit of the doctor. Thank you, sir. Thank you, Your Honor. Just briefly a couple of points. I know this is a complicated area of the law, and it sounds to me like the government is subtly shifting their position again from what they said in their brief. And if I understand the government's argument today, is they seem to be saying that you don't even have to have an overt act in the district of the prosecution. And maybe I'm misunderstanding that, but in their brief, they said specifically venues proper in any district where an overt act occurred. So if they're trying to shift again, then I'm a little confused, and I'll have to give that some thought as to where we are now on that. But nevertheless, the idea that there's something different about a drug conspiracy and a 371, a regular general conspiracy as far as venue goes, is a new argument that I don't believe that they've made before, and I'll have to give that one some thought also. The closest they've come to any assertion that you can have venue — I mean, I don't — I mean, it's clear that you have to have some kind of overt act in the district where it's being prosecuted. And if they're shifting away from that, I don't think the Court's going to find the law supports that. But the closest they've come to saying that that can be done by somebody other than a co-conspirator is to argue that that can be done by somebody who is not necessarily a co-conspirator, but who is being directed by a conspirator, like Dr. Neha Mattali. But that's clearly not the facts here, because — and the government's conceded in their brief that this is a buyer-seller relationship between these patients and Dr. Neha Mattali, just like any other kind of drug case. So a buyer — the whole point of the case law about the buyer-seller relationship is that the buyer is not part of the conspiracy. So here, these patients are certainly not being directed by Dr. Neha Mattali. That would require the government to say, Dr. Neha Mattali told this patient to go to Walgreens Pharmacy on Fifth Street in Plano to fill his prescription, and that's clearly not the facts that you have here. Just to clarify one thing, if I said this, I didn't mean to say it. The DEA didn't reject the case. The DEA brought the case. The DEA is who did the forum shopping. And this is news to me that the Northern District rejected the case. Now, I think that even makes it more egregious as far as the forum shopping. DEA was forum shopping because they couldn't get the Northern District to take their case, so they took it to the Eastern District. And another aspect of the government's argument that I'm having a little bit of a difficulty following, but they argue that the Garland Clinic is close to Plano, and therefore the Garland Clinic is close to the Eastern District of Texas. But what difference does that make, that, you know, just because you're close to another district doesn't give that district venue to try your case? And to the extent that that's their argument, I certainly think that they're not going to find any law to support that. Okay. Thank you very much. Thank you, sir.